IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| E-WATCH, INC., a Nevada Corporation, and e-WATCH CORPORATION, a Texas Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> March Networks Corporation <br><br> Defendant. | § § § § § § § § § § § § § Civil Action No. 9:06cv25 <br><br> Judge Clark |

## PLAINTIFFS' ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiffs E-WATCH, INC., a Nevada corporation, and e-WATCH CORPORATON, a Texas corporation, complain of Defendant MARCH NETWORKS CORPORATION, as follows:

### I. PRELIMINARY STATEMENT

1. David Monroe is the sole shareholder, director and officer of both E-Watch, Inc., a Nevada corporation, (hereinafter referred to as "E-Watch NV") and e-Watch Corporation, a Texas corporation, (hereinafter referred to as "Texas E-Watch"). The United States Patent and Trademark Office has awarded Mr. Monroe, an inventor and a recognized industry expert, numerous patents in the field of safety, security and surveillance systems.

2. Mr. Monroe has caused these patents to be assigned to Plaintiff E-Watch NV which has licensed Texas E-Watch the right to produce and sell products covered by the patents.

3. E-Watch NV owns the following patents which it has licensed to Texas E-Watch and which Plaintiffs here assert against the Defendant March Networks Corporation:

Patent Number 6,246,320 (hereinafter the " '320 Patent ") entitled "Ground Link with On-Board Security Surveillance System for Aircraft and Other Commercial Vehicles"; and

Patent Number 6,253,064 (hereinafter the " '064 Patent ") entitled "Terminal Based Traffic Management and Security Surveillance System for Aircraft and Other Commercial Vehicles"; and

Patent Number 6,392,692 (hereinafter the " '692 Patent ") entitled "Network Communication Techniques for Security Surveillance and Safety System"; and

Patent Number 6,545,601 (hereinafter the " '601 Patent ") entitled "Ground Based Security Surveillance System for Aircraft and Other Commercial Vehicles"; and

Patent Number 6,970,183 (hereinafter the " '183 Patent ") entitled "Multimedia surveillance and monitoring systems including network configuration."

These patents will be referred to hereinafter as "Plaintiff's Patents."

4. Defendant's products infringe Plaintiff's Patents. The main business of Defendant is to sell and support networked systems including systems for schools, buildings, financial institutions including wired and wireless systems and systems to enhance the security of customers, employees and assets by integrating wireless networks with on-board installations for enabling users to accurately track and monitor fleets, assets and personnel to reduce risk, improve the ability to respond to events and to collect video evidence from the field quickly and conveniently from any central location. Live or archived video can be accessed from multiple locations over existing wired and wireless networks, providing proactive monitoring capabilities, remote verification of alarms, and improved emergency response. The systems are intended to increase the efficiency and safety in operation, control and handling of fleets, assets and personnel. Defendant has sold its systems throughout the United States and the world, and has installations in Texas, Ohio, California, and elsewhere in this country as well as abroad. Defendant's products including its DVRs and its Mobile Surveillance System and its Facilities

Security System directly and indirectly infringe each of Plaintiff's Patents. March Networks' intentionally promotes infringement of the patents by all of its customers

5. Notwithstanding Plaintiff's patents, Defendant continues to aggressively expand its growth in this industry with infringing products and without compensation to Plaintiffs, the rightful owners of this intellectual property. Accordingly, Plaintiffs are forced to bring this action to enjoin Defendant from continuing to infringe on Plaintiff's Patents and seek monetary and other relief for Defendant's infringement of Plaintiff's Patents.

## II. PARTIES

6. Plaintiff e-WATCH CORPORATION is a Texas Corporation, having its principal place of business in San Antonio, Bexar County, Texas. Plaintiff E-WATCH, Inc. is a Nevada Corporation, having its principal place of business in San Antonio, Bexar County, Texas.

7. Defendant MARCH NETWORKS CORPORATION is a foreign corporation and, upon information and belief, is organized and existing under the laws of Canada and maintains its principle place of business at Tower B, 555 Legget Drive, Ottawa, Ontario Canada K2K 2X.

## III. JURISDICTION AND VENUE

8. This Court has personal jurisdiction over the Defendant because of its activities in the State of Texas and within the Eastern District of Texas.

9. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1338(a), (b) because Plaintiffs' claims arise under federal laws relating to patents.

10. Venue is proper in the United States District Court for the Eastern District of Texas, Lufkin Division pursuant to 28 U.S.C. § 1400(b) because Defendant has committed acts of patent infringement in this district.

## IV. FACTS

**A.     The Inventor.**

11.     Plaintiffs were formed to develop, manufacture, sell and support IP (Internet Protocol) based security and surveillance systems for public buildings and facilities such as banks, schools, museums, passenger terminals and the like.

12.     Plaintiff TEXAS E-WATCH (these references include its predecessor companies) has developed and markets fixed and mobile security and surveillance systems including, but not limited to, systems that can be used for commercial fleet terminals and for commercial transports such as aircraft, buses, trains and emergency response vehicles.

13.     Over the last 30 plus years, Mr. Monroe has been extensively involved in developing personal computer, networking, telecommunications, video teleconferencing and remote image transmission systems for ground support and aircraft, and security and surveillance systems and related technologies for over 25 years.

14.     Early in his career, Mr. Monroe was employed by Computer Terminal Corporation which became Datapoint Corporation, where he was involved in developing the early personal computers, software, peripherals and networking systems. During his employment with this company, he had many development positions including software design engineer, hardware design engineer, and engineering manager.

15.     At the age of 27, Mr. Monroe was appointed an officer of Datapoint Corporation, a computer company that became a Fortune 500 company during his tenure. Mr. Monroe served in several senior positions at Datapoint, including Vice President of Printing and Display Systems, Vice President/Product Line Manager and Vice President of Research and Development.

16. Mr. Monroe left Datapoint in 1983 and has since been involved in making sophisticated digital imaging and communications equipment for commercial, medical, military and other government applications. These applications include special purpose computers, cellular communication technology, and audio/video communication equipment for the Air Force, Army, Navy and Marines as well as the FBI, DEA, DHS, TSA and various state and local law enforcement agencies.

17. Mr. Monroe's equipment is extensively utilized in military systems, such as on the F-14 and F/A-18 fighter aircraft, Apache Helicopter, and other military platforms.

18. Mr. Monroe has also concentrated heavily in developing surveillance and security equipment, including night vision systems, streaming video, satellite based image communications systems, cellular imaging systems and the like.

19. Mr. Monroe's technology is heavily directed toward providing situational awareness data, data management and data distribution.

20. Mr. Monroe is an accomplished inventor and recognized industry expert. Over his lifetime, Mr. Monroe has been awarded over 20 U.S. Patents including his innovative solutions for video conferencing, data communications, safety, security and surveillance issues for the government, military and private sectors. In addition, Mr. Monroe has approximately 40 pending U.S. Patent applications in this field.

21. In the mid-1990's, in response to aircraft highjackings, school violence and the increase in violence against persons (in particular terrorism) throughout the world, Mr. Monroe increased his emphasis into developing safety, security and surveillance systems for the protection of people, buildings, and public conveyances.

22. Mr. Monroe is also a recognized expert in the field of air-to-ground, ground-to-air, air-to-

air and ground-to-ground image and data transmission, having developed many products used by the United States military and related groups for collecting and transmitting surveillance, intelligence and security information from remote locations to central processing activities. Mr. Monroe participated in the creation of the first Government tactical imagery standard, the National Image Transmission Format standard, used exclusively by the U.S. Government and its allies for military and intelligence gathering applications.

23. Systems developed and sold by Mr. Monroe's companies supported U.S. Government operations for analyzing and reconstructing the cause and effect of civilian and military air traffic accidents such as the crash of Pan Am Flight 109 over Lockerbie, Scotland and TWA-800 in the Atlantic Ocean.

24. Over the last decade, Mr. Monroe's companies, and Mr. Monroe personally, have invested millions of dollars in perfecting security, safety, and surveillance systems for enhancing the safe environment of military personnel as well as the general population.

25. Shortly after the attack on September 11, 2001, Mr. Monroe was invited to demonstrate his systems to the Associate Administrator of the Federal Aviation Agency (FAA), L-3 Communications, Northrop Grumman, Raytheon and members of Congress and their staff and the FBI and the newly formed Transportation Security Administration (TSA).

**The Patents.**

### The '356 Patent.

26. U.S. Patent No. 6,009,356, entitled: "Wireless Transducer Data Capture and Retrieval System for Aircraft," issued December 28, 1999 covers, *inter alia*, a wireless safety and surveillance system for recording data collected from one or more strategically placed sensors on board a commercial transport. The claims cover the deployment of a plurality of event sensors

on board a transport, a wireless transmitter associated with the sensors and a wireless receiver associated with a remote on board recorder.

### The '320 Patent.

27. U.S. Patent No. 6,246,320, entitled: "Ground Link with On-board Security Surveillance System for Aircraft and Other Commercial Vehicles," issued June 12, 2001, is directed, *inter alia*, to a comprehensive surveillance/communication system between a ground or base station and the vehicle or support and response vehicles. The claims cover the use of sensors for transmitting specific conditional data between and among the commercial vehicles, support and response vehicles and a base station.

### The '064 Patent.

28. U.S. Patent No. 6,253,064, entitled: "Terminal Based Traffic Management and Security Surveillance System for Aircraft and Other Commercial Vehicles," issued June 26, 2001 is directed, *inter alia*, to a traffic management system having ground based sensors for identifying the location of aircraft and support vehicles while in an airport. The claims cover the use of ground sensors and on board sensors for monitoring aircraft and support vehicles, generating decisions based on the location and transmitting decisions based on this information.

### The '692 Patent.

29. U.S. Patent No. 6,392,692, entitled: "Network Communication Techniques for Security Surveillance Safety System," issued May 21, 2002 is directed, *inter alia*, to a wireless security and surveillance system for port, port-to-transport, transport-to-transport, and transport-to-port. The claims cover the use of strategically placed sensors for monitoring a condition of an aircraft and generating an IP protocol signal representing this condition and transmitting this information to a port based monitoring system.

**The '601 Patent.**

30.  U.S. Patent No. 6,545,601, entitled: "Ground Based Security Surveillance System for Aircraft and other commercial Vehicles," issued April 8, 2003, is directed, *inter alia*, to a security and surveillance system for commercial transports on the ground by incorporating a plurality of strategically placed sensors on the ground and in the transport to monitor conditions of the transport and it vicinity while on the ground.  The claims cover the use of a central station for managing a network of sensors for transmitting signals identifying the monitored condition of the transport while in port.

**The '183 Patent.**

31.  U.S. Patent 6,970,183 entitled "Multimedia surveillance and monitoring system including network configuration," issued November 29, 2005, is directed, *inter alia*, to a comprehensive, wireless multimedia surveillance and monitoring system that provides a combination of megapixel digital camera capability with full motion video surveillance with a network, and servers with the option of geographical distribution with various wide area carriers.

## V. The Accused.

32.  Upon information and belief, Defendant March Networks Corporation, having a place of business at Tower B, 555 Legget Drive, Ottawa, Ontario, Canada K2K 2X3, is a company organized under the laws of Canada.

33.  Upon information and belief, Defendant has numerous representatives in the United States and is aggressively pursuing the United States market, including participation in numerous industry shows and expositions in the United States, including but not limited to the NSCA/PSA Systems Integration Expo in Orlando, Florida in March 2005, and the ISC West 2005 exposition in Las Vegas, Nevada in April 2005.

34. Upon information and belief, Defendant has sold and installed its products in Texas, California and Ohio and with a multi-state, multi-national retailer throughout the United States. Upon information and belief, these sales and installations will generate revenue in excess of $20,000,000.00.

35. Upon information and belief, Defendant now offers and will continue to offer numerous products which infringe one or more of the six patents listed above. These products and systems include networked digital video recording solutions; wired and wireless networked communications, facility and emergency response solutions; video security systems for transit and fleet operations; mobile surveillance systems and other networked solutions for collecting, archiving and mining surveillance data.

**The Accused Products.**

**Mobile Surveillance System.**

36. This system is designed to provide a safe and secure environment for public transit personnel and passengers by providing local or remote monitoring access to live or recorded video from any vehicle. The system allows personnel to monitor alarms, view live video, and search, replay and export stored video from any camera on any recorder.

**Facilities Security System.**

37. This system is designed to provide networked surveillance systems over existing (IP) networks for facilities such as banks, retail establishments and other public places and comprises a system configuration including camera-recording rates of 1 frame per second (fps) to 30 fps, and control of recording schedule and network bandwidth usage limitations.

## VI. CAUSE OF ACTION: PATENT INFRINGEMENT

38.     Plaintiffs incorporate the foregoing paragraphs by reference as if fully set forth below.

39.     Defendant has been and is currently infringing, contributorily infringing and/or actively inducing the infringement of one or more of the '601 Patent, '064 Patent, '320 Patent, and the '692 Patent by making, offering for sale and/or selling within this judicial district and in the United States the mobile surveillance system and the facility security system described above without license or authority from Plaintiffs in violation of 35 U.S.C. § 271.

40.     Upon information and belief, Plaintiffs further allege that Defendant's actions have resulted and are currently resulting in substantial lost sales to Plaintiffs, substantial unjust profits to Defendant, and its unjust enrichment, all in amounts yet to be determined.

41.     Defendant's actions have caused and are continuing to cause irreparable harm to Plaintiffs unless enjoined by the Court.

## VII. APPLICATION FOR INJUNCTIVE RELIEF

42.     Plaintiffs incorporate the foregoing paragraphs by reference as if fully set forth below.

43.     Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283 and Defendant should be enjoined from any activities that would cause or contribute to the continued infringement of the Plaintiffs' Patents.

44.     If injunctive relief is not granted, Plaintiffs will suffer irreparable harm. Under applicable law, Plaintiffs have a limited-in-time right to exclude use of the subject patents. Defendant's continued infringement of the Plaintiffs' Patents will continue to damage Plaintiffs' position in the marketplace by damaging and continuing to damage Plaintiffs business relationships and prospective business relationships, and causing Plaintiffs to continue to lose the competitive advantage and the goodwill they have created in the marketplace, all of which will

be devastating to Plaintiffs. Moreover, it will be difficult to determine the damages to Plaintiffs in the marketplace for the elements described above if Defendant's continued infringement is not enjoined.

45. Given Plaintiffs' limited-in-time right to exclude, the serious delay on this right caused by Defendant, the actual and presumed validity of the Plaintiffs' Patents, and the balance of hardships in this case strongly favors an injunction.

## VIII. ATTORNEYS FEES

46. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees under applicable law.

## IX. CONDITIONS PRECEDENT

47. All conditions precedent to Plaintiffs' right to recover as requested herein have occurred or been satisfied.

## X. JURY DEMAND

48. Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38.

## XI. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs ask that Defendant be cited to appear and answer and, on final trial, that Plaintiffs have judgment against Defendant for the following:

    a. Actual/economic damages;

    b. Permanent injunction;

    c. Attorney fees;

    d. Pre-judgment and post-judgment interest as allowed by law;

    e. Costs of suit; and

f.  All other relied to which Plaintiffs may show themselves justly entitled.

Dated this 24th day of January 2006.

Respectfully submitted,

By: _____
Clayton E. Dark, Jr.
State Bar No. 05384500
207 E. Frank, Ste. 100
Lufkin, Texas 75902-2207
Phone: (936) 637-1733
Fax: (936) 637-2897
E-mail: cekrad@yahoo.com

Anthony Constant
Attorney-In-Charge
State Bar No. 04711000
Southern District Bar No. 688
1570 Frost Bank Plaza
Corpus Christi, Texas 78470
(361) 698-8000 Telephone
(361) 887-8010 Facsimile
E-mail: afc@constantvela.com

**Of Counsel: PROVOST*UMPHREY**
Christopher T. Coco
State Bar No. 00787261
490 Park Street
P.O. Box 4905
Beaumont, Texas 77704-4905
Phone: (409) 835-6000
Fax:  (409) 838-8888
E-mail:  ccoco@provostumphrey.com

**Of Counsel: CONSTANT & VELA**
Filemon B. Vela, Jr.
State Bar No. 20536025
1570 Frost Bank Plaza
802 N. Carancahua
Corpus Christi, Texas 78470
(361) 698-8000 Telephone
(361) 887-8010 Facsimile
E-mail: vbf@earthlink.net

**Of Counsel: Bandas Law Firm**
Christopher A. Bandas
State Bar No. 00787637
500 N. Shoreline, Suite 1020
Corpus Christi, Texas 78471
(361) 698-5200 Telephone
(361) 698-5222 Facsimile
E-mail: cbandas@bandaslawfirm.com

**Of Counsel:**
Robert C. Curfiss
State Bar No. 05254200
1501 McKinney Street
Houston, Texas 77010
(713) 752-4322 Telephone
(713) 752-4221 Facsimile
E-mail: rcurfiss@jw.com